## Hitchman, Appellant, v. Kerbaugh, Inc.

*Negligence—Master and servant—Explosion of boiler—Burden of proof.*

1. In an action to recover damages for the death of plaintiff's husband occasioned by the explosion of a boiler alleged to be the property of and at the time of the accident used by the defendant company, the case was properly taken from the jury where all that

appeared by the plaintiff's case was that the deceased was a fireman employed by the defendant company and was working around the boiler at the time of the explosion; that it was not clear whether the defendant owned or operated the particular boiler that exploded, but that there was at least one other contractor or subcontractor on the ground to whom, under the proofs, the exploded boiler might have belonged; that there was some doubt as to whether the boiler examined by an expert witness for the plaintiff ten days after the accident, and a quarter of a mile away from the place of the explosion, was in fact the boiler which caused the injury; that the evidence as to the condition of the boiler was very meagre, not showing how long it had been used, or for what purposes, or that it had not been properly inspected; that it was probable, according to the testimony of an expert witness for the plaintiff, that the explosion was occasioned by failure of deceased to keep the boiler supplied with water, or by "the sudden introduction of cold water to a hot crown sheet," and that it was unlikely, according to the testimony of such witness, that the explosion was occasioned by reason of the boiler having been patched.

*Evidence—Negligence—Declarations—Res gestæ.*

2. In an action to recover damages for the death of plaintiff's husband, caused by the explosion of a boiler, proof that deceased, in answer to a question as to how the explosion occurred, replied "God only knows; I had plenty of water and plenty of steam" lacked the essential elements to make it admissible as a declaration constituting part of the res gestæ, and was properly refused as a mere recital of the deceased's opinion of existing conditions prior to the accident.

Argued Oct. 11, 1913. Appeal, No. 188, Oct. T., 1913, by plaintiff, from order of C. P. Somerset Co., Feb. T., 1913, No. 108, entering judgment of nonsuit in case of Mary Ann Hitchman v. H. S. Kerbaugh, Inc. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCH-ZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before RUPPEL, P. J.

The opinion of the Supreme Court states the facts.

The court entered judgment of nonsuit. Plaintiff appealed.

*Error assigned,* among others, was the order of the court.

*Berkey & Shaver,* for appellant.

*Charles F. Patterson,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

On August 31, 1912, James Hitchman, the husband of the plaintiff, was killed by the explosion of a boiler; his widow brought this suit to recover damages from H. S. Kerbaugh, Inc., alleging that at the time of the accident her husband was in the employ of the defendant corporation and under its control, that the boiler was the property of and in use by the latter, and that the explosion was due to its negligence. The trial court entered a nonsuit which it subsequently refused to take off.. The plaintiff has appealed and assigns for error several rulings upon the evidence, the refusal to allow. an amendment to the statement of claim, and the re-fusal to take off the nonsuit.

We have read the testimony, examined the record, and considered the arguments of counsel with care, but we are not convinced of error. As stated in the opinion of the court below, "There is not the slightest evidence to show how long the defendant owned this boiler; how long the boiler had been used; for what purpose it has been used;......no evidence to show lack of inspection or examination.......The evidence........as to the condition of the boiler is very meager. But a single witness was examined with reference to this matter, William Rodman (offered as an expert),....... Under the testimony of the plaintiff's witness, Rodman, it is just as probable that the explosion occurred by reason of the failure of the deceased to keep the boiler supplied with water......(as through the negligence of the defendant)." This expert admitted on cross-examination

that the explosion might have been caused by "the sudden introduction of cold water to a hot crown sheet,"—the theory of the defense.  The court further correctly states that certain of the testimony of Mr. Rodman "tends to disprove any theory of the explosion having occurred by reason of the boiler having been patched, by the bolts being old, the threads worn or of the thinness of the iron because of corrosion; the parts testified to by the witness were intact after the accident; the part that did blow out was......in close proximity to where the danger would result if water were turned on suddenly after allowing it to become too low, and thus coming in contact with overheated surface, causing the explosion; and the inference from these facts as testified to by Mr. Rodman would be rather favorable to the defendant."  While the plaintiff's expert stated the opinion that the use of limestone or sulphur water had damaged the boiler, there is no evidence in the case to show that such water had in fact been used.  It appears that the deceased was a fireman working around the boilers at the time of the explosion, and that he was in the employ of the defendant, but it is not made clear that the defendant owned or operated the particular boiler that exploded.  There was at least one other contractor or subcontractor on the ground to whom, under the proofs, the exploded boiler might have belonged; more than this, the testimony does not show with the degree of certainty it should that the boiler examined by Mr. Rodman, some ten days after the accident and a quarter of a mile away from the place of the explosion, was in fact the one that caused the damage in this case; or if it was the boiler, then there is no evidence to prove that when examined it was in the same condition as before or immediately after the accident.

Under the evidence a verdict against the defendant could not be sustained, and as said by the court below, "As the plaintiff seems to have exhausted her means of establishing her case during the trial it would be of no

benefit to her to put her to the expense of another trial which would necessarily result in the same way;" therefore, error was not committed in the nonsuit or in the refusal to permit the plaintiff to amend her statement of claim. Nor do we find reversible error in the rulings upon the evidence. The plaintiff's offer to prove that when Hitchman was found after the explosion and asked how it occurred, he replied, "God only knows; I had plenty of water and plenty of steam," was properly refused as a mere recital of the deceased's opinion of existing conditions prior to the accident; under our cases, it lacked the essential elements to make it admissible as a declaration constituting part of the res gestæ. The trial judge allowed a full and fair examination of the witnesses called to show the cause of the accident, and we are not convinced of error in the rulings in reference thereto; had all the testimony indicated in the rejected offers been accepted and added to that admitted, without more, a verdict thereon would have been but a conjecture as to the cause of the explosion. The death of the plaintiff's husband is to be regretted, but she is in the unfortunate position of not having the proofs to show that it was due to the negligence of the defendant.

Both the general facts and the particular testimony ruled upon in Marsh v. Lehigh Valley R. R. Co., 206 Pa. 558, and in the other cases cited by the appellant, were essentially different from those at bar, and none of the authorities in question controls the present case.

The assignments are all overruled and the judgment is affirmed.